In re Holly AVERYT, Plaintiff

v.

WAL–MART STORES, INC., Defendant.

No. 11SA66.

Supreme Court of Colorado,
En Banc.

Nov. 7, 2011.

Rehearing Denied Dec. 12, 2011.*

---

* Justice Marquez would grant the Petition; Justice Eid and Justice Boatright do not participate.

Perkins Coie LLP, Robert N. Miller, Stephanie E. Dunn, Michael A. Sink, Denver, Colorado, The Gold Law Firm, LLC, Gregory A. Gold, Greenwood Village, Colorado, Jeffrey R. Hill P.C., Jeffrey R. Hill, Colorado Springs, Colorado, Attorneys for Plaintiff.

Harris, Karstaedt, Jamison & Powers, P.C., Jamey W. Jamison, Alan Peter Gregory, Rita L. Booker, Englewood, Colorado, Greenberg Traurig, LLP, David G. Palmer, Brian L. Duffy, Denver, Colorado, Attorneys for Defendant.

Carter Boyle LLC, Nelson Boyle, Denver, Colorado, Attorneys for Amicus Curiae Colorado Trial Lawyers Association.

Justice RICE delivered the Opinion of the Court.

In this original proceeding under C.A.R. 21, we review the trial court's order granting Wal–Mart a new trial based on a purportedly untimely disclosure and a jury verdict that allegedly was not supported by the evidence and instead was the result of prejudice. We hold that the trial court abused its discretion in holding that Holly Averyt's attorney violated discovery rules when he failed to disclose a document from the City of Greeley that he received while Wal–Mart was making its opening statement. Further, we hold that the jury's verdict is supported by the evidence and is not the result of unfair prejudice. Therefore, we make this rule absolute.

## I. Facts and Proceedings Below

On December 13, 2007, petitioner, Holly Averyt, a commercial truck driver, slipped in grease while making a delivery to Wal–Mart Store # 980 in Greeley. The grease had accumulated in the grocery receiving area. As a result of her fall, Averyt ruptured a disc in her spine and injured her shoulder and neck. These injuries ended her career as a truck driver and have left her unable to perform many daily functions.

Averyt brought suit against Wal–Mart, alleging claims of negligence and premises liability. During discovery, Averyt's attorney unsuccessfully sought to obtain records from Wal–Mart documenting the grease spill. Wal–Mart, however, denied the existence of the grease spill, noting in its opening statement that there had been no grease spill and, if there had been, Wal–Mart would have records documenting it.

Despite Wal–Mart's persistent denial of the grease spill, Averyt's attorney continued to seek evidence to verify its existence. In the days leading up to the trial, Averyt's attorney sought to better understand how grease traps function. As a result of this last minute research, Averyt's attorney was advised to contact Weld County to determine if it had records documenting the grease spill. Averyt's attorney called Weld County during the lunch recess on the first day of trial. Although Weld County had no record of the grease spill, the representative suggested that Averyt's attorney contact the City of Greeley. A colleague then contacted the City of Greeley while Averyt's attorney returned to the trial.

While Wal–Mart was making its opening statement and claiming that there had been no grease spill, Averyt's attorney received an email on his mobile telephone from his colleague containing a memorandum referencing a grease spill and a related investigation and cleanup at a Greeley Wal–Mart (the Greeley report).[1] After both parties made

---

1. The report consists of seven short paragraphs spanning one and one-quarter pages, which describe inspections performed by City of Greeley employees from December 12, 2007 through December 17, 2007 involving the spill and subsequent clean up. It has no heading, no date, no

opening statements, the court announced the evening recess. Averyt's attorney spent the evening attempting to decipher the relevance of the report, specifically whether it pertained to Store # 980.

The next day, Averyt called as a witness her doctor, who testified to her injuries, and called a fellow truck driver, who testified that he had noticed a grease spill at the Wal-Mart two days before Averyt's slip. Averyt then called as a witness Jonnie Shommer, who was Wal-Mart's corporate representative designated under C.R.C.P. 30(b)(6). After Shommer testified that there had been no grease spill, Averyt impeached her testimony with factual questions based on the Greeley report. Averyt did not specifically refer to the report, nor did he introduce the report into evidence. When Averyt concluded the direct examination of Shommer, Wal-Mart requested, and was granted, a recess.

During the recess, Wal-Mart's attorney asked Averyt's attorney whether he had been reading from a document when he questioned Shommer. Averyt's attorney then gave Wal-Mart's attorney a copy of the Greeley report. After this exchange, and before Wal-Mart began cross-examining Shommer, Wal-Mart objected outside the presence of the jury to Averyt's use of the report during direct examination. It did not, however, request a mistrial, a continuance, a curative instruction, or a limiting instruction.[2] The court overruled Wal-Mart's objection.

During cross-examination, Wal-Mart admitted the Greeley report into evidence. The court then announced the evening recess. By the next morning, before cross-examination of Shommer was to resume, Wal-Mart informed the court and Averyt that it had located an assistant manager who remembered the grease spill and numerous documents corroborating the existence of the spill, including documents from three companies who were involved in cleaning up the spill. From that point forward, Wal-Mart

ceased to deny the existence of the grease spill and instead asserted that it exercised reasonable care to clean up the spill.

The jury found in Averyt's favor and awarded her $15 million in damages, including: $4.5 million in economic damages; $5.5 million in non-economic damages; and $5 million for her physical impairment. The trial court ultimately reduced the non-economic damages award to the statutory cap of $366,250 set forth in section 13-21-102.5(3), C.R.S. (2011).

After the verdict, Wal-Mart moved for a new trial based on surprise, non-disclosure, and unfair prejudice. The trial court granted Wal-Mart's motion, holding that Averyt should have disclosed the Greeley report before using it to question Wal-Mart's representative on the second day of trial. The court further held that the jury award was not supported by the facts, indicating that the jury had been unfairly prejudiced by the late disclosure of the Greeley report.

Averyt petitioned this Court to issue a rule to show cause which we granted.

## II. Analysis

### A. C.R.C.P. Disclosures

Wal-Mart contends that Averyt's attorney violated C.R.C.P. 26(e) by failing to disclose the Greeley report in a timely manner. Because the report is a public document equally available to both parties, we disagree. Instead, we hold that C.R.C.P. 26 does not apply to the report and that Averyt's attorney had no duty to disclose it.

Generally, this Court will review a decision by the trial court to grant a new trial for an abuse of discretion. *People v. Wadle*, 97 P.3d 932, 936 (Colo.2004). A trial court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair. *Dunlap v. People*, 173 P.3d 1054, 1094 (Colo. 2007). Although we review the imposition of sanctions for discovery violations for an

---

signature, no indication of the author or intended recipient, and no letterhead or other indication that it was from the City of Greeley. In addition, there are two Wal-Mart stores in Greeley; the report did not specify which Wal-Mart it concerned.

**2.** In fact, the court gave Wal-Mart the opportunity to clarify whether it sought any form of relief. It asked, "And your motion is to what, strike the testimony?" Wal-Mart did not answer the question, but rather continued to argue that Averyt's use of the Greeley report was inappropriate.

abuse of discretion, *see, e.g., Pinkstaff v. Black & Decker (U.S.) Inc.,* 211 P.3d 698, 702 (Colo.2009), we interpret the meaning of the discovery rules set forth in the Colorado Rules of Civil Procedure de novo, *City and Cnty. of Broomfield v. Farmers Reservoir & Irrigation Co.,* 239 P.3d 1270, 1274 (Colo. 2010); *Keenan ex rel. Hickman v. Gregg,* 192 P.3d 485, 487 (Colo.App.2008) (interpretation of the rules of civil procedure involves questions of law, which this Court reviews de novo).

C.R.C.P. 26 governs disclosures during discovery. Section (a) describes the mandatory disclosures that a party must make, including, among other things, a "listing [and] copy of ... all documents ... in the possession, custody, or control of the party that are relevant to disputed facts alleged with particularity in the pleadings." These disclosures must be made within thirty days after the case is at issue. C.R.C.P. 26(a)(1).

Because new information might be unearthed after the initial thirty-day deadline, section (e) requires a party to supplement its disclosures when it "learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the disclosure or discovery process." The purpose of these disclosure rules is to promote accuracy, encourage settlements, and avoid surprises at trial. *D.R. Horton, Inc.-Denver v. Bischof & Coffman Constr., LLC,* 217 P.3d 1262, 1267–68 (Colo.App.2009).

■ As a general rule, however, discovery is not required for public documents that are equally available to all parties. 27 C.J.S. Discovery § 136 at 223 (2009); *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.,* 242 F.R.D. 1, 11 (D.D.C.2007) ("Typically, courts do not order discovery of public records which are equally accessible to all parties."); *Krause v. Buffalo & Erie Cnty. Workforce Dev. Consortium, Inc.,* 425 F.Supp.2d 352, 374–75 (W.D.N.Y.2006) ("[D]iscovery need not be required of documents of public record which are equally accessible to all parties."); *SEC v. Samuel H. Sloan & Co.,* 369 F.Supp. 994, 995 (S.D.N.Y.1973) ("The purpose of discovery is to enable a party to discover and inspect material information which by reason of an opponent's control, would otherwise be unavailable for judicial scrutiny."); *Wolf v. Grubbs,* 17 Neb.App. 292, 759 N.W.2d 499, 524 (2009) (quoting 27 C.J.S. Discovery § 91 at 177 (1999)) ("[A]s a general rule, under statutes authorizing discovery no discovery can be required of documents of public record, as they are equally accessible to all parties."); *see also Hendler v. United States,* 952 F.2d 1364, 1380 (Fed.Cir.1991) ("For the Government to make requests which would require plaintiffs in turn to seek information from the Government itself, and then to seek dismissal with prejudice when plaintiffs failed to supply the Government with the information that the Government already had, seems a cruel joke."). This concept has been applied in the context of disclosures. *See ISP Chemicals LLC v. Dutchland, Inc.,* No. 5:08–CV–153, 2011 WL 2651241, at *4–5 (W.D.Ky. July 6, 2011) (holding that an agreed order with a state administrative agency was a public record and thus did not need to be disclosed).

In addition, we apply this general rule in the context of automatic disclosures because nothing in Rule 26 requires disclosure by a party of documents which it would not be required to produce, if requested, under C.R.C.P. 34.[3] This court adopted Rule 26 in 1994 as a part of broad changes to the civil discovery rules. C.R.C.P. 26. The goals of the new pretrial discovery system included "the elimination of surprise at trial, the discovery of relevant evidence, the simplification of the issues, and the promotion of expeditious settlement of cases." *Silva v. Basin W., Inc.,* 47 P.3d 1184, 1188 (Colo.2002). To this end, the drafters of the new rules "felt that automatic disclosure of relevant material ... might cause opposing counsel to serve their clients better." Richard P. Holme, *Colorado's New Rules of Civil Procedure,* 23 Colo. Law. 2467, 2474 (1994). Accordingly, Rule 26(a)(1) requires "that all parties make mandatory, automatic disclosure of certain key information to their opponents early in

---

3. Rule 34 governs the production of documents by one party upon request of another party.

the handling of the case and without request by the opponent." Holme, *supra*, at 2474.

This automatic disclosure, however, is not substantively broader in scope than the information which a party would otherwise have been required to disclose upon request. Rather, "[i]n many respects, the required automatic disclosures are not much different than the information which would have to be revealed in response to any competently drafted first set of interrogatories and request for production of documents" common in discovery practice before the rule changes. *Id.* We therefore conclude that Rule 26(a)(1) changed the timing and method of certain portions of discovery, but not the substantive scope of discoverable material. Accordingly, we apply to automatic disclosures under sections (a) and (e) of Rule 26 the general rule that discovery is not required for public documents.[4]

We expressly adopt this rule because a contrary rule would require continuing disclosure by one party of voluminous information that the party discovers in the public domain. By way of illustration, such information could include newspaper articles, minutes from meetings of governmental bodies, customer reviews, reports of health and safety inspections, complaints lodged with business ratings agencies, grievances filed with professional licensing authorities, and legal documents filed in other actions. The burden imposed upon the parties by such continuing disclosure outweighs any benefit of expediency gained by automatically sharing the information where, as here, the public information is readily available and equally accessible to both parties.

The Greeley report is a prime example of the kind of document that a party should not be required to disclose under C.R.C.P. 26(e). Averyt discovered the report by telephoning the City of Greeley. Moreover, upon discovering the Greeley report, Averyt could not know without further investigation who wrote it, when it was written, whether it was intended to be an official public document, and whether it pertained to the Wal–Mart store involved in this action. We cannot adopt a rule which would impose the burden of disclosure on one party who finds a document containing such uncertain information where the document is equally available to both parties in the public domain. In short, the report is a publicly available record that Averyt's attorney obtained from the City of Greeley. Averyt and Wal–Mart were on equal footing with regard to the ability to obtain the report. Accordingly, we hold that C.R.C.P. 26's disclosure requirements do not apply to the Greeley report and that Averyt had no duty to disclose it to Wal–Mart. Thus, we reverse the trial court's order as it pertains to this issue.

## B. Damages

The jury ultimately found in favor of Averyt and awarded her $15 million in damages, including: $4.5 million in economic damages; $5.5 million in non-economic damages;[5] and $5 million for physical impairment. In granting Wal–Mart's motion for a new trial, the trial court found that the jury's damages award was excessive, not supported by the evidence, and "could only be the result of prejudice and bias and the jury's desire to punish Wal–Mart." The trial court also concluded that the jury was unfairly prejudiced by what it determined to be Averyt's late disclosure of the Greeley report. Because we hold that Averyt had no duty to disclose the report, Averyt's alleged late disclosure could not have prejudiced the jury. Rather, any prejudice that the jury may have harbored was due to Wal–Mart's initial refusal to produce evidence of or admit the existence of the grease spill. Regardless of the effects of Wal–Mart's imprudent tactics, there is sufficient evidence in the record to support the jury's award.

4. By holding that a party need not automatically disclose public documents under Rule 26(a)(1), we do not foreclose the possibility that a party could obtain in discovery information about another party's knowledge or possession of a public document, such as by interrogatory or deposition.

5. The trial court ultimately reduced the non-economic damages award to $366,250—the statutory cap for non-economic damages.

■ A trial court may grant a new trial because of excessive or inadequate damages. C.R.C.P. 59(d)(5). This decision is left to the sole discretion of the trial judge, whose presence and observation at the trial better equip him to make the determination. *First Nat'l Bank of Canon City v. Campbell*, 198 Colo. 344, 346, 599 P.2d 915, 917 (1979). Despite this discretion, the amount of damages is within the sole province of the jury, and an award will not be disturbed unless it is completely unsupported by the record or if it is so excessive as to indicate that the jury acted out of passion, prejudice, or corruption. *Higgs v. Dist. Court*, 713 P.2d 840, 860–61 (Colo.1985). Regardless of these findings, the reasonableness of an award is always subject to judicial scrutiny in the post-trial and appellate stages of a case. *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 220 (Colo. 1984).

Unlike the trial court, we do not find that the jury's award was the result of unfair prejudice. The trial court based its conclusion that the jury's verdict was a result of unfair prejudice in part on its erroneous determination that Averyt had violated C.R.C.P. 26 by not disclosing the Greeley report in a timely manner. Because we hold that Averyt had no duty to disclose the report, her alleged late disclosure could not have prejudiced the jury. To the contrary, any prejudice that the jury could have harbored was a result of Wal–Mart's strategy of initially refusing to admit the existence of, or provide any evidence of, the grease spill and then eventually admitting to the spill by introducing the report. Therefore, any such error was invited by Wal–Mart's trial strategy and is not a valid justification for altering a jury's decision. *See People v. Zapata*, 779 P.2d 1307, 1309 (Colo.1989) (discussing the invited error doctrine).

■■ There is also adequate support in the record to justify the jury's award. We will not disturb an award of damages unless it is completely unsupported by the record. *Jackson v. Moore*, 883 P.2d 622, 625–26 (Colo.App.1994); *Husband v. Colo. Mountain Cellars, Inc.*, 867 P.2d 57, 60 (Colo.App. 1993) ("If there is evidence to support a jury's findings as to damages, those findings

may not be overturned by an appellate court. Thus, if the damages awarded … can be supported under any legitimate measure for damages, we may not overturn that award."). When reviewing a jury's award, we view the record in the light most favorable to the prevailing party and draw every inference deducible from the evidence in favor of that party. *Valdez v. Pringle*, 143 P.3d 1069, 1074 (Colo.App.2005), *rev'd in part and aff'd in part* by *Pringle v. Valdez*, 171 P.3d 624 (Colo.2007).

■ The trial court took issue with the amount awarded in each category of damages. With regard to economic damages, the trial court stated that the damages "exceeded the amount testified to by witnesses." As the trial court correctly explained, economic damages include past and future medical, hospital, or other expenses, as well as lost earnings. At trial, multiple witnesses testified that $500,000 was a proper estimate for Averyt's past medical costs. These same witnesses testified that Averyt's future medical costs would be approximately $1.6 million. Lastly, an expert in the field of vocational rehabilitation and planning testified that, assuming Averyt's current income, her lost earnings would be approximately $1.169 million. This expert, however, did not take into account the potential for more favorable future economic conditions. She also did not take into account the fact that, because Averyt was "leasing to own" her truck, Averyt would eventually avoid a sizeable leasing fee. Based on the witnesses' testimony, Averyt's attorney asked for $3.3 million in economic damages. Viewing the testimony in the light most favorable to Averyt and considering variables that could affect her lost income and future medical needs, we conclude that $4.5 million in economic damages is not so excessive as to warrant reversing the jury's award and granting a new trial.

■ With regard to non-economic damages, the court found that the damages awarded "exceeded even the amount asked for in Plaintiff's final argument." The trial court described non-economic damages as past and future physical and mental pain and suffering, inconvenience, emotional stress, and impairment of the quality of life. Re-

gardless of the amount that was requested, evidence in the record suggests that Averyt has and will suffer vast non-economic losses. Doctors testified that Averyt suffers from chronic pain and that such pain induces personality changes including depression, difficulty sleeping, and difficulty concentrating. Friends and fellow truck drivers testified that Averyt is now in constant pain, always looks tired and run down, and looks like she has aged ten years from the time of the accident. They further acknowledged her depression and testified that Averyt's most concerning issues were that she could no longer drive her truck, which she enjoyed doing, and a feeling that she could no longer be a productive member of society. A nurse, who was certified as an expert in life-care planning, testified that Averyt was emotional and cried when discussing losing her truck and not being able to do the job that she loved and was good at, as well as when describing the many tasks that she could no longer perform. Another witness, an expert in vocational rehabilitation, testified that when she interviewed Averyt, she "recall[ed] seeing a person in a lot of pain. It was visual, not just on her face, but also her presence." Lastly, Averyt herself testified that she misses the independence that she had in her job as a truck driver. We believe that this is sufficient evidence to support the jury's award of non-economic damages and will not reverse the jury's award.

█ Lastly, the trial court stated that "[g]iven the amounts of the economic and non-economic damages the verdict for physical impairment could only be the result of prejudice and bias and the jury's desire to punish Wal–Mart." Averyt's attorney asked for $6.2 million in damages for physical impairment. The trial court specifically instructed the jury that in determining damages for physical impairment, it should not include the economic or non-economic damages already considered. We must assume that the jury followed the court's instructions. *Armentrout v. FMC Corp.*, 842 P.2d 175, 187 (Colo.1992). Further, we know of no authority stating that damages for physical impairment must have a relationship to economic and non-economic damages. Testimony in this case indicated that, as a result of her injuries, Averyt has difficulty walking, falls often, has bladder and bowel incontinence, likely cannot work in any kind of job, and has trouble performing simple everyday tasks such as cooking, carrying groceries, cleaning, and basic hygiene. We believe that the jury's award is supported by the evidence and is not the result of prejudice. Thus, we refuse to reverse the jury's award and grant a new trial.

### III. Conclusion

For the reasons discussed above, we make this rule absolute and reverse the trial court's order granting a new trial.

Justice MÁRQUEZ concurs in part and concurs in the judgment, and Justice COATS joins in the concurrence in part and the concurrence in the judgment.

Justice EID does not participate.

Justice MÁRQUEZ, concurring in part and concurring in the judgment.

In lieu of seeking any immediate relief that might have mitigated the perceived prejudice of Averyt's disclosure on the second day of trial, Wal–Mart instead made a tactical decision to introduce the Greeley report into evidence and use it to question Wal–Mart's designated corporate representative. The next morning, Wal–Mart turned over nearly seventy pages of previously undisclosed documents corroborating the existence of the spill, and shifted the focus of its defense to its clean-up efforts. Having made this tactical decision and lost, Wal–Mart cannot now claim unfair prejudice justifying a new trial. Because I believe the trial court abused its discretion in granting a new trial under C.R.C.P. 59 under these circumstances, I concur in the result reached by the majority, and I join Part II.B of the opinion concerning the jury's damage award. However, I write separately to express my disagreement with the majority's rationale in Part II.A and my concern that its holding undermines the purpose of mandatory disclosures under C.R.C.P. 26(a).

Today the majority effectively holds that a party who comes into possession of a public

document that is equally available to all parties has no duty under C.R.C.P. 26(a) or C.R.C.P. 34 to disclose the existence (or its possession) of that document, simply because the document happens to be publicly available. Maj. op. at 460–61. In my view, such a sweeping exception to these rules is unsupported by their plain language. Moreover, the majority's new rule thwarts the truth-seeking purpose of our discovery rules and is contrary to this court's long-standing approach to construing our discovery rules liberally, as the majority itself acknowledges, to "avoid surprises at trial." Maj. op. at 460–61 (noting that the goals of the pretrial discovery system adopted in 1994 included "the elimination of surprise at trial, the discovery of relevant evidence, the simplification of the issues, and the promotion of expeditious settlement of cases") (quoting *Silva v. Basin W., Inc.,* 47 P.3d 1184, 1188 (Colo.2002)); *Cameron v. Dist. Court,* 193 Colo. 286, 290, 565 P.2d 925, 928 (1977) (stating that Colorado's rules "should be construed liberally to effectuate the full extent of their truth-seeking purpose").

## I. Disclosure Obligation

### A.

"Among the many important purposes of discovery, the most central to a fair trial is the parties' production of all relevant evidence." *Trattler v. Citron,* 182 P.3d 674, 679 (Colo.2008). C.R.C.P. 26(a)(1)(B) details a party's obligations to disclose and to produce relevant documents. These obligations are distinct. *See, e.g., Forbes v. 21st Century Ins. Co.,* 258 F.R.D. 335, 337 (D.Ariz.2009) ("[A] duty to disclose is not synonymous with a duty to produce."). With respect to a party's duty to disclose, our rule provides that a party, without awaiting a discovery request, "shall" provide to the other parties "[a] listing, together with a copy of, or a description by category and location of, *all* documents, data compilations, and tangible things in the *possession, custody, or control* of the party that are *relevant to disputed facts* alleged with particularity in the pleadings." C.R.C.P. 26(a)(1)(B) (emphasis added).

With respect to a party's obligation to produce such documents, our rule requires a party to "mak[e] available for inspection and copying the documents and other evidentiary material, not privileged or protected from disclosure, as though a request for production of those documents has been served pursuant to C.R.C.P. 34." *Id.* Accordingly, a party need not produce a document that is privileged or otherwise protected from disclosure, for example, trade secrets or documents protected by the attorney work product doctrine. In addition, a party may object to the production of responsive documents if those documents would be "unreasonably cumulative or duplicative" of prior document productions or if those documents are "obtainable from some other source that is more convenient, less burdensome, or less expensive," such as might be the case with publicly available documents. C.R.C.P. 26(b)(2)(F)(i). Thus, our rules account for the potential burden of requiring a party to produce voluminous information that might be readily available to other parties by other means.

However, even if a party ultimately is not required to produce certain documents, the party is not absolved from disclosing the existence of relevant or responsive documents, by listing them on a privilege log, for example, or objecting to their production on grounds of burdensomeness. Such disclosure permits an opposing party to move to compel production if necessary, and a court may then resolve disputes in accordance with C.R.C.P. 26(b) and 37.

Importantly, the general scope of discovery is defined by Rule 26(b): "parties may obtain discovery regarding *any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any ... documents ....*" C.R.C.P. 26(b)(1)(emphasis added). This general provision governs the scope of all disclosures, whether made pursuant to Rule 26(a) or in response to a specific discovery request under Rules 33 and 34. *See* C.R.C.P. 33(c) ("Interrogatories may relate to any matters which can be inquired into pursuant to C.R.C.P. 26(b)...."); C.R.C.P. 34(a)(1) (providing that a party may request

production of documents which "contain matters within the scope of C.R.C.P. 26(b) and which are in the possession, custody, or control of the party upon whom the request is served").

Today the majority carves a broad new exception to a party's mandatory disclosure obligation under Rule 26(a)(1)(B) for "public documents," an exception that not only significantly alters the scope of discovery but finds no support in the plain language of Rule 26. In my view, the majority fails to distinguish between a party's obligation to disclose responsive documents under Rule 26(a)(1)(B) and (b)(1) and its potentially narrower obligation to produce such documents where good cause exists under Rule 26(b)(2)(F) to relieve a party of that obligation. By conflating these two obligations, the majority's holding wholly absolves a party of its duty under either Rule 26(a) or 34 to produce responsive documents that are publicly available and equally accessible to all parties without a motion to compel ever having to be filed. Even more perplexing, today's holding absolves a party of any duty to disclose the existence of such documents in its possession, custody, or control, contrary to the plain language of Rule 26(a)(1)(B), Rule 26(b)(1), and Rule 34(a)(1).

I fear that, under today's holding, a party is free to forever hide responsive "public documents" in its possession—regardless of how relevant those documents might be to disputed issues in the case, and regardless of whether opposing parties know the documents exist, let alone how difficult or burdensome it might be for them to discover those documents in the public realm. The consequences of today's holding are particularly troubling where a party's "possession, custody, or control" of a publicly available document may be critical to disputed issues of knowledge.[1]

I fail to see how the majority's approach comports with the truth-seeking purposes of our discovery rules and this court's long-standing practice of construing our discovery rules liberally to avoid surprises at trial. *See Cameron,* 193 Colo. at 290, 565 P.2d at 928–29; *see also* C.R.C.P. 16 cmt. (noting that C.R.C.P. 26 and other rules were developed to eliminate "hide-the-ball" and "hardball" tactics; such rules form a system "based on communication, including required early disclosure of ... documents relevant to the case, which disclosure should lead in many cases to early evaluation and settlement efforts").

As the majority acknowledges, Rule 26(a) was designed to further the purposes of our discovery rules by moving common discovery practices to the beginning of a case. *See* Maj. op. at 460–61. But under the majority's new rule, a party cannot obtain immediate and automatic disclosure of relevant, publicly available documents despite the plain language of Rule 26(a). Rather, the majority requires a party to seek and obtain such documents on its own and then wait until considerably later in the litigation to inquire about such documents via deposition or interrogatory. *Id.* at 461 & n. 4.[2] The majority's rule thus nullifies the purpose of automatic disclosures with respect to public docu-

---

1. A reverse hypothetical based on this very case is illustrative. Assume, for example, that Wal–Mart possessed a copy of the Greeley report, and Averyt was unaware that it existed. Under the majority's holding, Wal–Mart has no obligation under C.R.C.P. 26(a) (or C.R.C.P. 34) to disclose the report—an obviously relevant document in its possession—simply because it is a public document that Averyt could obtain directly from the City of Greeley. In this scenario, even if Averyt is fortuitous enough to stumble upon the Greeley report independently, the majority's holding still relieves Wal–Mart of any affirmative duty to reveal its possession (and consequently, its knowledge) of the report unless or until Averyt discovers the existence of the report on its own and

then asks Wal–Mart about it in a deposition. Maj. op. at 461 & n. 4. In my view, this approach substantially distorts the truth-seeking function of our discovery rules.

2. The majority apparently acknowledges that a party must disclose the existence (and its possession) of a public document in a deposition or in response to an interrogatory, *see* C.R.C.P. 30, 33, yet holds that the same document need not be disclosed under Rule 26(a) or pursuant to a request for production under Rule 34. Given that the scope of discovery is uniformly defined by Rule 26(b), I fail to grasp the majority's logic in crafting these inconsistent obligations to disclose such information.

ments[3] and delays, rather than expedites, the disclosure of such information—indeed, if such disclosure occurs at all. Moreover, the majority grounds its new rule in the perceived burden of having to disclose "voluminous information"—a claim not remotely at issue in this case, where the dispute concerns a one-page memorandum.

The majority relies on several cases from other jurisdictions for the proposition that "discovery is not required for public documents that are equally available to all parties." Maj. op. 460–61 Upon closer inspection, these cases actually address a party's obligation to *produce* publicly available documents; they say nothing of a party's obligation to *disclose* the existence of such documents in the party's possession. Indeed, none of the cases relied on by the majority addresses whether a party failed to timely disclose documents under the mandatory disclosure provisions of Rule 26(a); to the contrary, these cases largely concern motions to compel production in response to specific discovery requests under F.R.C.P. 34 or a corresponding state rule.[4] Such motions to compel presumably could not have been brought if the existence of the disputed documents was unknown to the moving party. By relying on such cases, the majority erroneously conflates a party's duty to disclose relevant documents with its duty to produce such documents.

In apparent acknowledgment that these cases do not involve a party's mandatory disclosure obligation, the majority notes that the concept that "discovery is not required for public documents that are equally available to all parties" has "been applied in the context of disclosures." For that proposition, the majority cites a single unpublished federal trial court opinion, *ISP Chem. LLC v. Dutchland, Inc.*, No. 5:08–CV–153, 2011 WL 2651241, at *4–5 (W.D.Ky. July 6, 2011). Maj. op. at 460. But that case does not stand for the broad rule the majority creates. There, the defendant argued that a court order in another case should be excluded at summary judgment as untimely disclosed. The timing of the supplemental disclosure, however, was a nonissue, because the defendant knew of the other case and could have obtained those documents. *See Dutchland*, 2011 WL 2651241, at *5 ("As [plaintiff] points out in its sur-reply, [defendant] knew of [plaintiff's] proceeding with the Kentucky Department of Environmental Protection and could have requested copies of the documents filed in [plaintiff's] case.").

### B.

With the distinction between a party's obligations to disclose and produce responsive documents in mind, I now turn to whether Averyt had an obligation to disclose the existence of the Greeley report, a document "relevant to disputed facts alleged with particu-

---

**3.** I also note that the majority's new rule could lead to potentially absurd results in litigation where a government agency is a party and the bulk of relevant discoverable material consists of public documents. Under the majority's new rule, it would appear that even government parties in litigation need not disclose such documents in their possession, custody, or control. The uncertainty created by the majority's new rule in this context could force unnecessary parallel litigation under the Open Records Act, which carries very different obligations on parties with respect to the scope, timing, and costs of producing documents. *See generally* §§ 24–72–200.1 to –206, C.R.S. (2011).

**4.** *See Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 242 F.R.D. 1, 11–12 & n. 5 (D.D.C.2007) (addressing motion to compel production of particular documents identified in plaintiff's F.R.C.P. 34 requests for production); *Krause v. Buffalo & Erie Cnty. Workforce Dev. Consortium, Inc.*, 425 F.Supp.2d 352, 375 (W.D.N.Y.2006)

(denying motion to strike certain documents submitted as summary judgment exhibits on the ground that those documents did not need to be produced under F.R.C.P. 34); *SEC v. Samuel H. Sloan & Co.*, 369 F.Supp. 994, 994–95 (S.D.N.Y. 1973) (denying motion under F.R.C.P. 34(b) to compel production of a transcript of a prior administrative hearing between the parties, which plaintiff, but not defendant, chose to purchase from the court reporter, on the ground that the transcript is "equally available to all parties on payment of the lawfully prescribed costs"); *Wolf v. Grubbs*, 17 Neb.App. 292, 759 N.W.2d 499, 524 (2009) (reversing trial court's order requiring counsel to deliver responsive documents to opposing counsel's office for inspection and copying because it sufficed under Nebraska's discovery rule for counsel to make the documents "available" for inspection and copying) (citing with approval *Samuel H. Sloan & Co.*, 369 F.Supp. at 994).

larity in the pleadings." C.R.C.P. 26(a)(1)(B). Averyt herself did not have "possession" or "custody" of the report within the meaning of C.R.C.P. 26(a)(1)(B). Accordingly, whether Averyt had an obligation to disclose the existence of the Greeley report turns on whether her attorney's possession of the report means that the report came within Averyt's "control."

This court has yet to address whether relevant documents discovered by a party's attorney during an independent investigation are within the party's "control" as that term is used in C.R.C.P. 26 or 34. Federal courts addressing the issue under the federal rules, however, have held that such documents are indeed within the party's "control." *See, e.g., Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 211–13 (D.D.C.2006) ("Because a client has the right, and the ready ability, to obtain copies of documents gathered or created by its attorneys pursuant to their representation of that client, such documents are clearly within the client's control."); 7–34 James C. Francis & Robert M. Bloom, *Moore's Federal Practice—Civil* § 34.14 (2011) ("Documents in the possession of a party's attorney may be considered to be within the control of the party within the meaning of Rule 34.... In addition, 'if an attorney comes into possession of a document *as attorney for that party* his [or her] possession of the documents is the possession of the party.'" (footnotes and citations omitted)). Because this court has similarly defined "control," *see Michael v. John Hancock Mut. Life Ins. Co.*, 138 Colo. 450, 454, 334 P.2d 1090, 1093 (1959) (holding that "possession, custody, or control" in C.R.C.P. 26 and 34 requires the production of documents "which are obtainable by the order or direction of the litigant"), I would hold that such documents are within a party's "control." [5]

Unlike the majority, I would therefore hold that Averyt's attorney did have an obligation to disclose the existence of the Greeley report given its relevance to the central disputed issue of whether a grease spill had occurred. *See* C.R.C.P. 26(a)(1)(B). Here, Averyt did disclose the Greeley report to Wal–Mart when her counsel produced it on the second day of trial. Thus, in my view, the only real issue is whether the disclosure was untimely as a supplemental disclosure under the circumstances. *See* C.R.C.P. 26(e) ("A party is under a duty to supplement its disclosures under section (a) of this Rule when the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the disclosure or discovery process.... Supplementation shall be performed in a timely manner."). Indeed, the majority's emphasis on the (initial) uncertainty of the information really concerns whether the document was timely disclosed under the circumstances, not whether such a document should be categorically excluded from disclosure because it happens to be a public document.

I perceive the question of timing to be a close one under the unusual facts presented here. As the majority correctly observes, the document had no heading, no date, no signature, no indication of the author or intended recipient, and no letterhead or other indication it was from the City of Greeley; moreover, it did not specify which of two Wal–Mart stores in Greeley it concerned. Maj. op. at 458–59 n. 1. Thus, upon discovering the report, Averyt could not know without further investigation precisely what she had. Maj. op. at 461. However, I need not decide whether Averyt's disclosure was un-

---

5. At least two federal courts have acknowledged the practical burden of requiring an attorney to disclose the existence of every responsive document that an attorney comes across in the public domain during the course of his or her case preparation. *See, e.g., Kartman v. State Farm Mut. Auto. Ins.*, 247 F.R.D. 561, 565 (S.D.Ind. 2007); *Gary Price Studios, Inc. v. Randolph Rose Collection Inc.*, No. 03 Civ. 969, 2006 WL 2381817, at *2 (S.D.N.Y. Aug. 16, 2006). Although neither decision addresses whether practical necessities require the federal discovery rules to be construed in a way that lessens a party's disclosure obligations in this context, *Kartman* suggests that, at a minimum, a party's attorney should disclose those documents that he or she plans to utilize at depositions and at trial (such as the Greeley report here). *See Kartman*, 247 F.R.D. at 565.

timely to determine whether the trial court abused its discretion in awarding Wal–Mart a new trial.

## II.  New Trial

Wal–Mart moved for a new trial under C.R.C.P. 59 primarily on grounds that Averyt's late disclosure of the Greeley report amounted to an "irregularity in the proceedings" that deprived Wal–Mart of a fair trial. The trial court agreed and concluded that Averyt's failure to disclose the report "at least before trial began on the second day, was not justified."

In my view, the trial court abused its discretion in awarding Wal–Mart a new trial, for two reasons.

First, with respect to Wal–Mart's litigation strategy, any marginal unfair prejudice caused by the *timing* of Averyt's disclosure was minimal, at most.  Both the record and Wal–Mart's motion for a new trial reveal that, in delivering its opening statement, Wal–Mart had fully committed to its position that no grease spill occurred—before Averyt's counsel had a chance to review the Greeley report or ascertain whether Averyt had an obligation to disclose it under our discovery rules.  Specifically, the record shows that Wal–Mart first denied the existence of the grease spill near the beginning of its opening statement but that Averyt's attorney did not glance at his mobile phone and notice the e-mail containing the Greeley report until toward the middle or end of Wal–Mart's opening statement.  Counsel's first opportunity to attempt to interpret the .pdf document (on the two-inch mobile phone screen) was during a break following Wal–Mart's opening statement; only that evening did counsel print the document and review it.  Accordingly, Wal–Mart cannot claim it was "prevented from having a fair trial" on the ground that, had it been apprised of the Greeley report on the first day of trial, its defense strategy would have been entirely

different.  Moreover, the trial transcript reflects that Averyt's use of the report to question Wal–Mart's designated corporate representative on the second day of trial produced no admissions or revelations that a spill in fact occurred; the witness simply denied the suggestion, consistent with Wal–Mart's defense theory and opening statement.

Second, upon learning of the existence of the Greeley report during a break on the second day of trial, Wal–Mart objected to Averyt's attorney's use of the report to question Wal–Mart's designated corporate representative, but did not move for a mistrial, request a continuance, seek to have the testimony stricken, or otherwise request any immediate relief to mitigate any prejudice arising from Averyt's disclosure, even when invited by the trial court to do so.[6]  Instead, Wal–Mart made a strategic decision to proceed with the trial and abruptly change its defense strategy.  Indeed, Wal–Mart (not Averyt) chose to admit the Greeley report into evidence and later call as witnesses Wal–Mart employees who engaged in the clean-up of the spill.  Having opted to proceed with the trial and in this fashion in lieu of seeking any immediate relief, Wal–Mart cannot have it both ways and claim it was deprived of a fair trial now that the jury has returned a verdict against it.  *See, e.g., Tiller v. Baghdady,* 294 F.3d 277, 281 (1st Cir. 2002) (stating that the appropriate course for a party who uncovers a discovery violation of F.R.C.P. 26(a) is " 'not to seek reversal after an unfavorable verdict,' but to request a continuance 'at the time the surprise occurs.' " (quoting *U.S. Fid. & Guar. Co. v. Baker Material Handling Corp.,* 62 F.3d 24, 29 (1st Cir.1995))).

For these reasons, I agree with the majority that the trial court abused its discretion in granting a new trial, and therefore concur in the result.  I further agree there is sufficient evidence in the record to support the jury's

---

**6.**  Ordinarily, violations of C.R.C.P. 26(a) and (e) are addressed through the sanctions set forth in Rule 37(c), which provides for the exclusion of nondisclosed evidence unless the failure to disclose is substantially justified or harmless to the

opposing party.  *See Todd v. Bear Valley Vill. Apartments,* 980 P.2d 973, 977 (Colo.1999). Wal–Mart did not seek relief or sanctions under this provision.

 

damage award, and therefore join Part II.B of the majority opinion. I nonetheless express my concern that today's holding will have far-reaching consequences for discovery practices in Colorado.

I am authorized to state that Justice COATS joins in this special concurrence.