24CA0334 Gunderson v Gunderson 03-27-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0334
Mesa County District Court No. 22CV30428
Honorable Dinsmore Tuttle, Judge

Kimberly Gunderson,

Plaintiff-Appellant,

v.

Jerry Gunderson,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MOULTRIE
Lipinsky and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

Wegener Lane & Evans, P.C., Benjamin M. Wegener, Dalen B. Porter, Grand Junction, Colorado, for Plaintiff-Appellant

Starritt Legal, LLC, Sam D. Starritt, Grand Junction, Colorado, for Defendant-Appellee

¶ 1 Plaintiff, Kimberly Gunderson (Kimberly), appeals the district court's order declining to take judicial notice of certain rulings in earlier civil litigation between her and defendant, Jerry Gunderson (Jerry) (jointly, the parties or the Gundersons).[1] Kimberly also appeals the judgment entered on the jury's award of zero damages to her. We affirm.

I. Background

¶ 2 The Gundersons have been married for over twenty-five years but have been embroiled in divorce proceedings since 2015. They have also been embroiled in civil litigation spanning multiple states since at least 2017. The prior proceedings relevant to this appeal include (1) a civil case in Colorado that Jerry initiated against Kimberly and others (the prior Colorado case); and (2) a civil case in Nevada that Jerry initiated against Kimberly, The Kimberly Gunderson Trust (Kimberly's trust), and others (the Nevada case). Based on these prior proceedings, Kimberly filed a lawsuit against Jerry in which she alleged abuse of process and malicious prosecution (the current Colorado case). In her complaint filed in

---

[1] Because the parties share the same last name, we refer to them by their first names. No disrespect is intended.

1

the current Colorado case, she requested a jury trial and an award of economic and noneconomic damages.

¶ 3     Relevant to this appeal are the following facts about the parties' practice of purchasing real estate with funds from Kimberly's trust and the parties' litigation history after Kimberly filed for dissolution of marriage.

## A.     Kimberly's Trust

¶ 4     In 2003, Kimberly's father set up an irrevocable trust under Nevada law.  In 2005, the trustees of that trust formed a spendthrift trust for Kimberly's benefit — Kimberly's trust.  During their marriage, the Gundersons purchased multiple homes using funds borrowed from Kimberly's trust.  The trustees of Kimberly's trust conditioned the loans on Kimberly's and Jerry's execution of loan documents, such as promissory notes, that required them to repay the funds with interest and transfer title to the properties to Kimberly's trust.  A Nevada limited liability company that Kimberly's trust owned (the LLC) generally held the titles to the Gundersons' various residential properties.  The trustees didn't require the Gundersons to make payments on the principal or interest on the loans when their marriage was intact; instead, the

parties were simply required to maintain the properties in good condition.

¶ 5 Between 2005 and 2015, the parties followed this practice of using funds borrowed from Kimberly's trust to purchase various properties in Nevada, Colorado, and Montana. In 2015, Kimberly filed for dissolution of marriage in Montana, where the parties then resided. In 2017, the LLC — which held notes secured by the parcel of Colorado real property on which the Gundersons lived — called the notes due. The notes expressly provided that the LLC could demand full payment from Kimberly and Jerry individually or jointly, and the LLC demanded that Jerry individually pay the notes in full by April 2017. Thereafter, the parties began their yearslong civil litigation battle.

## B. The Prior Colorado Case

¶ 6 Jerry didn't pay the notes as the LLC demanded. Rather, in May 2017, he initiated the prior Colorado case against Kimberly, Kimberly's father, the LLC, and others seeking declaratory relief related to the notes. Jerry also asserted claims of affirmative fraud, negligent misrepresentation, and fraudulent concealment or nondisclosure against Kimberly, Kimberly's father, and the LLC. He

3

further pleaded contribution, promissory estoppel, and unjust enrichment claims against Kimberly individually.

¶ 7 In December 2021, the court entered an order granting Kimberly's motion to dismiss four of Jerry's seven claims against her (the prior Colorado order). A month later, the court entered judgment in favor of the LLC and concluded that the LLC was entitled to collect the entire amount due under the notes from either Kimberly or Jerry (the prior Colorado judgment). The court also found in favor of Jerry on his contribution claim against Kimberly and concluded that, after Jerry had satisfied his obligations under the notes, he could seek contribution from Kimberly.

## C. The Nevada Case

¶ 8 Jerry filed the Nevada case in April 2018, while the prior Colorado case was pending. In the Nevada case, he asserted similar claims to those he brought in the prior Colorado case but included as defendants Kimberly's father's trust, Kimberly's trust, and their respective trustees (collectively, the trust defendants). Jerry also asserted that he had a marital property interest in Kimberly's trust.

¶ 9     In December 2018, the Nevada court entered an order granting the trust defendants' motion to dismiss Jerry's complaint with prejudice and concluding that Jerry had no interest in Kimberly's trust (the Nevada order).

¶ 10     Although the trust defendants were dismissed under the Nevada order, the claims against Kimberly individually and the LLC remained pending in the Nevada case.  In March 2019, the Nevada court entered a judgment in favor of the LLC and denied Jerry's request for judgment.

¶ 11     In September 2020, Kimberly, Kimberly's trust, the LLC, and Jerry stipulated to the dismissal, with prejudice, of Jerry's remaining claims against the various defendants (the stipulation). The Nevada case ended once the Nevada court approved the stipulation.[2]

### D.     The Current Colorado Case

¶ 12     In November 2022, Kimberly filed the current Colorado case, in which she asserted that Jerry abused the legal process and

---

[2] Jerry appealed the Nevada order dismissing his complaint against the trust defendants to the Nevada Supreme Court; the court affirmed the Nevada order in December 2021.

maliciously prosecuted her based on the litigation in the prior Colorado case and the Nevada case. The court scheduled the current Colorado case for a four-day jury trial and ordered the parties to file trial briefs at least fourteen days before trial.

¶ 13 Two months before trial, Kimberly filed her "Plaintiff's Unopposed Motion for Judicial Notice of Adjudicative Facts Pursuant to C.R.E. 201" (the motion) and requested that the court take judicial notice of the prior Colorado order, the prior Colorado judgment, and the Nevada order (collectively, the prior rulings). The court granted the motion.

¶ 14 In his trial brief, filed two weeks before trial, Jerry objected to Kimberly's request to admit the prior rulings into evidence, arguing that their admission was improper under CRE 201 because they included adverse rulings and findings about Jerry's credibility. Alternatively, he argued that, if the court admitted the prior rulings into evidence, it should redact "factual findings [the] jury must reach, credibility findings[,] and the judge[s'] identities." He further argued that the prior rulings should not be referenced at trial until the court determined whether and to what extent the prior rulings were admissible.

¶ 15     A week before the trial, the parties participated in a pretrial readiness conference during which the court addressed the issue of judicial notice of the prior rulings.  Coincidentally, the judge who had presided over the prior Colorado case also presided over the current Colorado case, which was why Jerry requested that the judge's identity be redacted from any documents from the prior Colorado case provided to the jury.

¶ 16     During the pretrial readiness conference, the judge agreed that her name should be redacted from any of the prior Colorado case documents provided to the jury.  Initially, the judge likewise agreed that findings about Jerry's credibility should also be redacted. Kimberly's counsel agreed to the redaction of the judge's name but objected to redacting the court's prior credibility findings.  Instead, her counsel suggested that the court provide the jury with a limiting instruction clarifying the jury's duty to determine credibility in the current Colorado case, regardless of any prior credibility findings.

¶ 17     At the conclusion of the pretrial conference, the court permitted the parties to file motions and responses detailing their arguments for or against the court taking judicial notice of the prior rulings.  In his motion, Jerry reasserted his argument in his trial

brief that "[a] court may take judicial notice of its own record and adopt factual findings from a previous case as long as the previous case involved the same parties and issues," but the court "may not . . . take judicial notice of findings of fact on the very issue the parties are litigating." In her response, Kimberly asserted that "the jury may consider the [prior rulings] and the determinations contained therein with regard to the fact that civil lawsuits were brought against [Kimberly] by [Jerry], that the civil lawsuit ended in favor of [Kimberly], and as evidence that the lawsuit was brought without probable cause."

¶ 18     The court issued an order a few days before trial ruling that it would take judicial notice of the prior rulings as evidence of "the fact that civil lawsuits were brought against [Kimberly] by [Jerry]" and that "at least one of those lawsuits . . . ended in favor of [Kimberly]," but it declined Kimberly's request that it judicially notice the prior rulings as evidence that the prior Colorado case was brought without probable cause.

¶ 19     The court specifically denied Kimberly's request that it take judicial notice of the courts' credibility determinations underlying the prior rulings, noting that, while it may be inclined to judicially

8

notice certain information contained in related proceedings' records, "it [was] unwilling, without more, to commit to invading the province of the jury by taking judicial notice of underlying credibility determinations related to [the current Colorado case] that were raised in the prior proceedings."

¶ 20 The court also declined Kimberly's request that it take judicial notice of "the contents of other files" because it didn't know exactly which records counsel might seek judicial notice of; thus, the court deemed the matter unripe for ruling. However, the court provided Kimberly with the opportunity to raise this issue again at the pretrial hearing set the day before trial, so long as Kimberly identified the records she would be requesting that the court judicially notice and her purpose for offering those records into evidence.

¶ 21 At the pretrial hearing, Kimberly's counsel reminded the court that the prior rulings Kimberly was requesting be judicially noticed were attached to the motion, filed in September 2023. Jerry's counsel argued that the only fact from the prior proceedings of which the court could take judicial notice was that he didn't prevail on certain claims. He again objected to the court taking judicial

notice of the credibility findings or the substantive content of any prior rulings. Kimberly's counsel argued that the substance of the prior rulings went "to the basis of [her] claims" — abuse of process and malicious prosecution — and would minimize the relitigation of those issues. However, Kimberly's counsel ultimately agreed to redact the court's credibility findings from the prior rulings.

¶ 22    At the conclusion of the pretrial hearing, the court ordered counsel for both parties to submit their proposed redactions to the prior rulings. The following day, before trial began, the court adopted the entirety of Jerry's proposed redactions to the Nevada order, which redacted large portions of the court's conclusions of law. After the first day of trial, the court ruled on the parties' proposed redactions of the filings in the prior Colorado case. The court ordered the redaction of much of the court's findings and the judge's identity from both the prior Colorado order and the prior Colorado judgment.

¶ 23    During closing argument, Kimberly's counsel requested that the jury award Kimberly damages against Jerry, including $119,870.95 in economic damages for attorney fees and costs she incurred in her defense against Jerry's claims in the Nevada case

and the prior Colorado case, and noneconomic damages for "stress, anxiety, [and] the issues that she's [had] to deal with over all these years because of what [Jerry] [has] been doing with regard to these lawsuits."

¶ 24    The jury came back with a split verdict: It concluded that Jerry didn't engage in malicious prosecution in either of the prior proceedings and that he did not abuse process in the prior Colorado case, but it concluded that Jerry abused process in the Nevada case. The jury didn't award Kimberly any damages for Jerry's abuse of process in the Nevada case, however.

¶ 25    After the court entered judgment, Kimberly filed this appeal, in which she asserted that the court abused its discretion by redacting the prior rulings rather than taking judicial notice of them in their entirety. She also appeals the jury's verdict declining to award her damages despite its finding in her favor on her claim of abuse of process in the Nevada case.

¶ 26    We first discuss the legal principles underlying judicial notice — CRE 201 — and our standard for reviewing a court's ruling on a party's request for judicial notice. We then consider the court's application of CRE 201 in this case and conclude that the

court didn't abuse its discretion when it redacted certain portions of the prior rulings. Next, we discuss the legal principles underlying a jury's determination of damages and the applicable standard of review. We conclude that the jury's verdict awarding no damages to Kimberly was not inconsistent or irreconcilable with the evidence presented at trial. Accordingly, we affirm.

## II. The Court Did Not Err by Declining to Take Judicial Notice of the Unredacted Prior Rulings

### A. Applicable Legal Principles

¶ 27     CRE 201 governs a court's ability to take judicial notice of an adjudicative fact, which means the fact is either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Larsen v. Archdiocese of Denver*, 631 P.2d 1163, 1164 (Colo. App. 1981) (quoting CRE 201(b)).

¶ 28     Under Rule 201, a court may "adopt factual findings from a previous case as long as the previous case involved the same parties and the same issue." *Mun. Subdistrict, N. Colo. Water Conservancy Dist. v. OXY USA, Inc.*, 990 P.2d 701, 711 (Colo. 1999). It is

improper, however, for a court to take judicial notice of the "very issue the parties are litigating." *Id.* Rule 201 has "traditionally been used cautiously in keeping with its purpose to bypass the usual fact finding process only when the facts are of such common knowledge that they cannot reasonably be disputed." *Prestige Homes, Inc. v. Legouffe*, 658 P.2d 850, 853 (Colo. 1983).

¶ 29    Facts that have been considered common knowledge include, but aren't limited to, unquestioned laws of mathematics, calendar days and dates, and matters of public record. *See id.*; *see also Winterberg v. Thomas*, 246 P.2d 1058, 1061 (Colo. 1952); *Sierra Mining Co. v. Lucero*, 194 P.2d 302, 303 (Colo. 1948); *In re Interrogatory Propounded by Governor Roy Romer on House Bill 91S-1005*, 814 P.2d 875, 880 (Colo. 1991). It's commonplace for a court to take judicial notice of its own court records or another court's judgments or opinions, but a court commits error if it takes judicial notice of court records for the truth of the matters asserted in other litigation. *Doyle v. People*, 2015 CO 10, ¶ 11; *see Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992).

13

## B. Standard of Review

¶ 30    We review a court's evidentiary rulings, such as a ruling on taking judicial notice pursuant to Rule 201, for an abuse of discretion. *Quintana v. City of Westminster*, 56 P.3d 1193, 1198-99 (Colo. App. 2002). A trial court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair" or when it misapplies the law. *Rains v. Barber*, 2018 CO 61, ¶ 8 (citation omitted).

## C. Analysis

¶ 31    Kimberly asserts that the court erred by (1) reversing its pretrial order granting her request to admit unredacted copies of the prior rulings into evidence; (2) allowing Jerry to object to the admissibility of the prior rulings; and (3) accepting Jerry's proposed redactions to the prior Colorado order and judgment. We discern no error for three reasons.

¶ 32    First, we note that, even though the court initially granted the motion, the court wasn't required to follow that prior ruling because it wasn't a final ruling in the case. *See Giampapa v. Am. Fam. Mut. Ins. Co.*, 64 P.3d 230, 243 (Colo. 2003) ("When a court issues final rulings in a case, the 'law of the case' doctrine generally requires

14

the court to follow its prior relevant rulings.").  A ruling is "final" when it "end[s] the particular action in which it is entered and leave[s] nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding."  *Luster v. Brinkman*, 250 P.3d 664, 666 (Colo. App. 2010).

¶ 33    Furthermore, a court has discretion to "reconsider and reverse a prior ruling if it determines that . . . 'it needs to correct its previous ruling because of a legal or factual error.'"  *People v. Warren*, 55 P.3d 809, 813 (Colo. App. 2002) (citation omitted). While the court previously granted the motion, upon briefing and the parties' oral argument, the court concluded that it would be error to allow the prior rulings into evidence without redaction because they contained findings of fact, conclusions of law, and credibility findings that would invade the province of the jury. Thus, the court acted within its discretion to reverse its prior ruling to correct a legal error.

¶ 34    Second, C.R.C.P. 121, section 1-15(4), provides that "[t]he court has discretion to order briefing or set a hearing on [a] motion," which is what the court did here.  Because Jerry opposed

the court taking judicial notice of credibility findings and other substantive content in the prior rulings, it was wholly within the court's discretion to order briefing and a hearing on the matter before it issued a ruling. *See* C.R.C.P. 121, § 1-15(4); *BFN-Greeley, LLC v. Adair Grp., Inc.*, 141 P.3d 937, 942 (Colo. App. 2006) (If an evidentiary hearing isn't required, "it is within the district court's discretion to conduct an evidentiary hearing or rule on the submitted motions.").

¶ 35    Moreover, Kimberly asserts that she was "unfairly prejudiced" because the court's redaction order "occurred in the middle of [Kimberly] putting her case on at trial." But, as the record demonstrates, this argument ignores the fact that Kimberly had ample opportunity before trial to present written and oral argument on the judicial notice issues, and the court entered its order on the redactions at the conclusion of the first day of trial, before Kimberly put on any evidence. *See Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 318 (Colo. App. 2009) ("[W]here the party against whom the motion is directed had ample opportunity to present written argument, the due process requirements of notice and a reasonable opportunity to be heard have been satisfied."), *aff'd*, 252 P.3d 1071

(Colo. 2011). Thus, we reject Kimberly's assertion that the court erred by allowing Jerry to object and file a motion in opposition to her request for judicial notice.

¶ 36     Third, we reject Kimberly's argument that the court erred by admitting redacted versions of the prior rulings because Kimberly sought to admit them for purposes contrary to those underlying Rule 201. As previously noted, Kimberly asserted claims of abuse of process and malicious prosecution against Jerry. "The essential element of an abuse of process claim is the use of a legal proceeding in an improper manner; therefore, an improper use of the process must be established." *Sterenbuch v. Goss*, 266 P.3d 428, 439 (Colo. App. 2011). To prove malicious prosecution, a plaintiff must satisfy five elements, including that the defendant lacked probable cause to bring the action against them. *Hewitt v. Rice*, 154 P.3d 408, 411 (Colo. 2007).

¶ 37     Kimberly argued that "the jury [could] consider the [prior rulings] and the determinations contained therein with regard to the fact that civil lawsuits were brought against [Kimberly] by [Jerry], that the civil lawsuit ended in favor of [Kimberly], and as evidence that the lawsuit was brought without probable cause."

17

Furthermore, Kimberly's counsel argued that, to prove abuse of process and malicious prosecution, Kimberly "[had] to show that there [were] improper reasons or lack of probable cause for the other cases to have . . . been filed" and that "those issues were determined, not only in the Nevada case . . . [b]ut also [in the prior Colorado case]."

¶ 38 Thus, Kimberly admitted that she was asking the court to take judicial notice of the prior rulings to establish certain elements of her claims against Jerry, which is not the purpose of judicial notice. *See Liberty Mut. Ins. Co.*, 969 F.2d at 1388 ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'") (citation omitted). And the court recognized that it would invade the province of the jury's duty as the fact finder if it took judicial notice of the substance of the prior rulings.

¶ 39 Indeed, admission of the prior rulings without redactions would have invaded the province of the jury in two ways. First, the court properly declined to take judicial notice that "the [prior Colorado case] was brought without probable cause" because such

a finding would establish an essential element of malicious prosecution — probable cause — which was a determination reserved for the jury. *See Larsen*, 631 P.2d at 1164 (affirming the court's ruling in a negligence case that declined to take judicial notice that "a slippery surface presents more than an ordinary risk of harm" because "[w]hether certain conditions . . . present more than an ordinary risk of harm depends upon the circumstances of each case, and thus, is not an adjudicative fact" but rather a fact for the jury to decide); *see also Prestige Homes, Inc.*, 658 P.2d at 853-54 (Judicial notice should be used "to bypass the usual fact finding process only when the facts are of such common knowledge that they cannot reasonably be disputed," and therefore, a court's use of judicial notice to substitute its own factual findings "for those of the [jury] . . . expand[s] the judicial notice rule far beyond its intended scope.").

¶ 40      Second, it is for the jury, as the fact finder, to weigh the evidence, resolve conflicts in the evidence, and determine the credibility of the witnesses. *See Karg v. Mitchek*, 983 P.2d 21, 25 (Colo. App. 1998) ("It is the sole province of the jury to resolve disputed issues of fact and to determine the credibility of witnesses,

19

the weight to be accorded testimony, and the inferences to be drawn from evidence."); *see also Vigil v. Pine*, 490 P.2d 934, 936 (Colo. 1971). Without redactions, the jury may make its credibility determinations based on the prior rulings instead of focusing on the evidence and witness testimony presented during trial.

¶ 41 Accordingly, we conclude that the court did not abuse its discretion by redacting substantive portions of the prior rulings.

### III. The Jury's Verdict Awarding No Damages Was Neither Inconsistent Nor Irreconcilable

#### A. Applicable Legal Principles

¶ 42 A general verdict requires the jury to announce the "ultimate legal result of each claim" and "permits the jury to decide who wins," whereas a special verdict "presents the jury with specific questions of fact" and then "the court applies the law to the facts found by the jury and enters judgment accordingly." *Morales v. Golston*, 141 P.3d 901, 906 (Colo. App. 2005) (citation omitted).

¶ 43 A jury verdict that awards zero damages, even when evidence of damages was presented, may be upheld if there was ample evidence to support the award. *Gonzales v. Windlan*, 2014 COA 176, ¶¶ 39-40; *see Lee's Mobile Wash v. Campbell*, 853 P.2d 1140,

1143 (Colo. 1993) (When "evidence is conflicting, a reviewing court should not disregard the jury's verdict, which has support in the evidence, in favor of its own view of the evidence" but should "reconcile the verdict with the evidence if at all possible" and affirm it "[i]f there is any basis for [it].").

### B.    Preservation and Standard of Review

¶ 44    Whether a party has preserved their objection to a jury's verdict for inconsistency depends on whether the verdict was a special verdict or a general verdict with answers to special interrogatories. *Morales*, 141 P.3d at 905; *see* C.R.C.P. 49(a)-(b). "Rule 49(a) does not require a party to object to the inconsistencies in a jury's answers to a special verdict before the jury is discharged in order to preserve its right to challenge the inconsistencies . . . on appeal." *Morales*, 141 P.3d at 905.

¶ 45    On appeal, we must "examine the instructions, the verdict forms, and the evidence . . . to determine from the record whether there was competent evidence from which the jury logically could have reached its verdict." *Id.* at 906. And in considering a party's challenge to the amount of damages the jury awarded, we "will not disturb an award of damages unless it is completely unsupported

21

by the record." *Averyt v. Wal-Mart Stores, Inc.*, 265 P.3d 456, 462 (Colo. 2011). The standard for reversing a jury verdict on damages is "only upon a showing that the jury's action was arbitrary and capricious or that the jury was swayed by passion or prejudice." *Gonzales*, ¶ 38 (quoting *Peterson v. Tadolini*, 97 P.3d 359, 361 (Colo. App. 2004)).

## C.    Analysis

¶ 46    As a preliminary matter, Jerry asserts that Kimberly's objection to the jury's verdict is unpreserved because the verdict was a general verdict, and she didn't object or allege any inconsistency before the jury was discharged. Conversely, Kimberly asserts that the verdict was a special verdict; thus, she wasn't required to object to any inconsistencies to preserve the issue for our review.

¶ 47    We conclude the verdict was a special verdict because the verdict form required the jury to answer specific questions of fact, and the court entered judgment based on the facts that the jury found. *See Morales*, 141 P.3d at 906. Accordingly, Kimberly wasn't required to object to any inconsistencies before the jury was

discharged to preserve this issue for appeal, so we will consider the merits of her argument.

¶ 48 Kimberly asserts that the verdict is inconsistent because it found Jerry liable for abuse of process in the Nevada case but didn't award her any damages "where the undisputed evidence proved otherwise." Referring to exhibits admitted at trial, she contends that she presented "undisputed evidence" of the attorney and court filing fees she incurred in the Nevada case. She argues that, because the evidence admitted at trial also showed that she received money from her trust to pay for her legal fees and other expenses, the jury was "swayed by their emotions, personal biases, and prejudice" and "evidently biased towards her" when it awarded her zero damages despite finding in her favor on the abuse of process claim concerning the Nevada case. We are unpersuaded.

¶ 49 Kimberly's opening brief only addresses the jury's decision not to award her damages for attorney fees and filing costs related to the Nevada case. However, her argument fails to acknowledge that she agreed to bear her own attorney fees and costs in a stipulation signed by her counsel in that case. Kimberly's counsel didn't object when Jerry's counsel offered the stipulation into evidence, and

Kimberly didn't deny that her lawyer entered into the stipulation when asked about it at trial. Kimberly fails to identify anything in the record that otherwise supports her contention that the jury was biased against her. *See Mauldin v. Lowery*, 255 P.2d 976, 977 (Colo. 1953) ("It is the task of counsel to inform us . . . both as to the specific errors relied on and the grounds and supporting facts and authorities therefor.").

¶ 50 Accordingly, we conclude that the jury's award of zero damages to Kimberly is supported by the record, and thus, we will not disturb the award. *See Averyt*, 265 P.3d at 462; *see also Higgs v. Dist. Ct.*, 713 P.2d 840, 860-61 (Colo. 1985) ("[A]bsent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate.") (citation omitted).

## IV.  Disposition

¶ 51 The judgment is affirmed.

JUDGE LIPINSKY and JUDGE JOHNSON concur.