23CA2006 Bai v Shoyu Denver 11-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2006
Arapahoe County District Court No. 21CV31019
Honorable Ben L. Leutwyler III, Judge

---

Xuanzhi Bai and Junchen Dai,

Plaintiffs-Appellees,

v.

Shoyu Denver LLC, a Colorado limited liability company,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE GOMEZ
Welling and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 20, 2025

---

Xuanzhi Bai, Pro Se

Junchen Dai, Pro Se

AQMN Law, Charles S. McIntyre IV, Lakewood, Colorado, for Defendant-Appellant

¶ 1    After the parties' business relationship ended, plaintiffs, Xuanzhi Bai and Junchen Dai, brought claims against defendants, Zuoquan Lin and Shoyu Denver LLC (Shoyu), for breach of contract, fraudulent concealment, civil theft, civil conspiracy, breach of fiduciary duty, promissory estoppel, and unjust enrichment. A jury found in plaintiffs' favor on the first five claims, and the trial court later found in plaintiffs' favor on the final two claims and entered judgment accordingly. Shoyu now appeals that judgment.[1]

¶ 2    Shoyu raises various issues on appeal relating to the liability findings on most of the claims, the calculation of damages, the denial of its motion for a new trial, and the calculation of pre- and post-judgment interest. We affirm the liability finding and calculation of damages on the civil theft claim, decline to consider Shoyu's arguments on liability and damages as to the other claims (as those arguments are mooted by our affirmance on the civil theft claim), affirm the denial of Shoyu's motion for a new trial, reverse the establishment of the rate of postjudgment interest, decline to consider Shoyu's argument regarding prejudgment interest (as that

---

[1] Initially, Lin also appealed the judgment. But his appeal was dismissed after a bankruptcy proceeding rendered it moot.

argument, too, is mooted by our affirmance on the civil theft claim), and remand the case to the trial court to correct the rate of postjudgment interest.

## I.    Background

¶ 3    Evidence of the following facts was presented at trial.

¶ 4    Lin, Dai, and a third person (the coworker) worked together at a restaurant.[2]  In late 2018 or early 2019, the three of them began discussing the possibility of opening a restaurant together.  Dai told Bai about the discussions, and Bai expressed interest in starting the business with them.

¶ 5    After their initial discussions, the group began looking at potential locations for the restaurant.  Eventually, Dai found one. In July 2019, the two plaintiffs, Lin, Lin's wife, and the coworker visited the location.  Afterward, the group gathered at a coffee shop and had a conversation during which plaintiffs, Lin, and the coworker verbally agreed to start the restaurant.  They further agreed that Lin would file the articles of incorporation to establish a

---

[2] The coworker, Nengbao Lin (who is not related to Zuoquan Lin), was initially a defendant in this case, but plaintiffs dismissed their claims against him at the start of the trial.

limited liability company (LLC).  Later, in a group text chain, Lin confirmed that he had filed the articles, thus creating Shoyu, but that he had listed only his name in those documents.  He said he would add both plaintiffs' names to the filing later, but he never did.

¶ 6     As the months went on, plaintiffs paid for various expenses to start the business, including the costs of hiring an artist to design a logo, an attorney to negotiate the lease, and an architect and contractor to design and improve the location.  They also paid for rent, supplies, a website, and a sign for the restaurant.  In total, pursuant to the parties' agreement, plaintiffs invested about $123,000, or roughly 40% of the startup costs, in exchange for a combined 40% interest in the restaurant and 40% of the profits.

¶ 7     The restaurant opened in August 2020 and started turning a profit a few months later.  Per the parties' agreement, plaintiffs started receiving a combined 40% of the restaurant's profits, which Lin paid to them by check each month.  At the same time, the profit and loss statements Lin shared with plaintiffs started indicating that Lin was withdrawing various amounts ranging from $2,700 to $18,529 for "cash salary" purposes.  After a few months, plaintiffs asked Lin what the cash withdrawals were for, and he told them he

was using the cash to pay the employees. However, it was plaintiffs' understanding that the employees were paid via checks issued by Shoyu. Plaintiffs asked some of the employees how they were paid in an attempt to confirm that understanding.

¶ 8 In March 2021, after plaintiffs made their inquiries with some of the employees, Lin sent plaintiffs a letter telling them they could no longer come to the restaurant or talk to the employees. After that time, plaintiffs no longer received any profit payments. They also didn't receive any more profit and loss statements until such statements were provided in discovery in this case.

¶ 9 The parties attempted without success to resolve their disputes. Plaintiffs then filed this action against Lin and Shoyu.

¶ 10 The case proceeded to a jury trial. At the conclusion of the trial, the jury found in plaintiffs' favor on their claims for breach of contract, fraudulent concealment, civil theft, civil conspiracy, and breach of fiduciary duty. The jury awarded the same amount of damages for each plaintiff on each claim: $593,060.70. For the civil theft claim, the trial court tripled that amount to $1,779,182.10 for each plaintiff pursuant to section 18-4-405, C.R.S. 2025. The court further found in plaintiffs' favor on their promissory estoppel and

unjust enrichment claims and awarded damages on those claims in the amount of $51,928.14 to Bai and $99,247.28 to Dai, including prejudgment interest.

¶ 11 Because plaintiffs' claims reflected alternative theories of recovery and sought duplicative damages, the court determined that plaintiffs could not receive multiple recoveries. The court accordingly entered judgment for each plaintiff in the amount of $1,779,182.10 plus costs and attorney fees. The court also ordered that interest on any unpaid amount of the judgments and fee and cost awards would accrue at the rate of 9% per annum.

¶ 12 Defendants thereafter filed a motion for a new trial. The court didn't decide the motion within sixty-three days, so the motion was deemed denied under C.R.C.P. 59(j).

## II. Sufficiency of the Evidence

¶ 13 Shoyu first challenges the sufficiency of the evidence supporting the liability findings and damage awards on several of the claims. We consider only the civil theft claim, as we find it dispositive.

## A. Liability for Civil Theft

¶ 14     We first consider Shoyu's challenge to the sufficiency of the evidence to support the jury's finding that it committed civil theft.[3]

¶ 15     We review sufficiency of the evidence challenges de novo. *Northstar Project Mgmt., Inc. v. DLR Grp., Inc.*, 2013 CO 12, ¶ 14. In doing so, "we must determine whether the evidence, viewed as a whole and in the light most favorable to the prevailing party, is sufficient to support the verdict." *Parr v. Triple L & J Corp.*, 107 P.3d 1104, 1106 (Colo. App. 2004). We also must "draw every reasonable inference from the evidence in favor of [the prevailing] party." *Averyt v. Wal-Mart Stores, Inc.*, 2013 COA 10, ¶ 18 (quoting *Harris Grp., Inc. v. Robinson*, 209 P.3d 1188, 1201 (Colo. App. 2009)). It is the jury's sole prerogative to resolve disputes of fact and to determine the weight of the evidence, the inferences to be drawn from it, and the credibility of the witnesses. *Fisher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 57, ¶ 40, *aff'd*, 2018 CO 39. Accordingly, we won't disturb a jury's verdict if there is competent

---

[3] Although plaintiffs brought some of their claims only against Lin, they brought this claim against both defendants, and the jury found both defendants liable on this claim.

evidence in the record to support it, even if reasonable people could reach a different conclusion based on the same facts. *Id.*; *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009).

¶ 16    To prevail on a claim of civil theft, a plaintiff must prove all the elements of criminal theft by a preponderance of the evidence. *State v. 5 Star Feedlot Inc.*, 2019 COA 162M, ¶ 14, *aff'd on other grounds sub nom., Dep't of Nat. Res. v. 5 Star Feedlot, Inc.*, 2021 CO 27. Those elements include that the defendant "(1) knowingly obtained, retained, or exercised control over anything of value of another without authorization; and (2) intentionally or knowingly deprived the other person permanently of the use or benefit of the property." *Million v. Grasse*, 2024 COA 22, ¶ 44; *accord* § 18-4-401(1), C.R.S. 2025.

¶ 17    Shoyu argues that plaintiffs couldn't have proved the first element of civil theft because plaintiffs voluntarily gave Lin and Shoyu (which Lin controlled) the $123,000 investment. But plaintiffs' civil theft claim wasn't limited to the receipt of the initial investment. It also encompassed the unauthorized retention of the 40% interest in and 40% of profits from the restaurant, which the parties had agreed plaintiffs would receive in exchange for their

7

investment.  And, at trial, plaintiffs presented evidence that the parties agreed plaintiffs would have a right to the 40% interest and 40% of profits, that defendants paid plaintiffs the 40% profit for the first few months the restaurant was profitable, and that as of March 2021 defendants stopped paying any profits and denied plaintiffs had any interest in the restaurant.  Thus, the evidence supports the jury's finding that Shoyu knowingly retained plaintiffs' business interest and share of profits without authorization.

¶ 18     Shoyu also argues that plaintiffs couldn't have proved the second element of civil theft because Lin and Shoyu never intended to permanently deprive plaintiffs of their share of the profits.  In support of this argument, Shoyu cites evidence regarding the parties' attempts to resolve their dispute before this lawsuit was filed, arguing that "Lin . . . had every intention of returning [plaintiffs'] investment to them."  But the jury heard evidence that Lin barred plaintiffs from the restaurant and ceased paying their agreed-upon share of the profits when plaintiffs inquired about the accounting.  Lin also acknowledged that as of that time, "in [his] mind, one of them or they both were no longer a partner" in the business.  Moreover, the trial court limited the admission of

evidence of the parties' settlement discussions under CRE 408, and what little evidence there was of those discussions didn't necessarily indicate that Lin and Shoyu had always intended to honor the parties' agreement. Rather, ample evidence supports the jury's conclusion that defendants intended to permanently deprive plaintiffs of the use or benefit of their interest in and right to profits from the restaurant. And, at any rate, "[t]he fact that stolen property was eventually returned is not a defense to a theft charge." *In re Estate of Chavez*, 2022 COA 89M, ¶ 48 (quoting *People v. Pedrie*, 727 P.2d 859, 863 (Colo. 1986)).

¶ 19 Finally, Shoyu argues that plaintiffs' claim fails because the LLC documentation shows that plaintiffs weren't members of Shoyu. Thus, Shoyu argues, plaintiffs could not have been entitled to any interest in the restaurant business or any share of its profits. But plaintiffs presented evidence that the parties had agreed they would be members of the business and that Lin failed to honor their agreement by filing articles for the LLC that excluded plaintiffs and failing to add plaintiffs as members despite his promise to do so. Plaintiffs also presented evidence that Lin had agreed to share with them 40% of the restaurant's profits but he failed to do so. Thus,

there was ample basis for the jury to conclude that plaintiffs were entitled to a 40% interest in the restaurant and 40% of its profits.

¶ 20 Accordingly, we will not disturb the jury's verdict for plaintiffs on their civil theft claim. *See Fisher*, ¶ 40; *S.G.L.*, 214 P.3d at 583.

## B. Damages Awarded for Civil Theft

¶ 21 We next turn to Shoyu's challenge to the sufficiency of the evidence to support the jury's damage award as it relates to the civil theft claim.

¶ 22 The jury has discretion to determine the amount of damages to award. *Tisch v. Tisch*, 2019 COA 41, ¶ 67. "[A]bsent an award so excessive or inadequate as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption[,] or other improper cause invaded the trial, the jury's determination of the fact is considered inviolate." *Id.* (alteration in original) (quoting *Higgs v. Dist. Ct.*, 713 P.2d 840, 860-61 (Colo. 1985)). We won't disturb a damage award unless it is "completely unsupported by the record." *Id.* (quoting *Averyt v. Wal-Mart Stores, Inc.*, 265 P.3d 456, 462 (Colo. 2011)). Still, "a damage award may not be based on speculation or conjecture." *Id.* (quoting *Logixx Automation, Inc. v. Lawrence Michels Fam. Tr.*, 56 P.3d 1224, 1227 (Colo. App. 2002)).

¶ 23    The jury awarded each plaintiff the same amount of damages — $593,060.70 — on each of the five claims the jury decided, including the claim for civil theft.  Ample evidence supports this amount of damages on the civil theft claim.

¶ 24    As noted above, plaintiffs presented evidence at trial of an agreement whereby they were collectively entitled to 40% of the restaurant's profits and a 40% interest in the restaurant itself.

¶ 25    At closing argument, plaintiffs' counsel argued, based on plaintiffs' testimony and defendants' profit and loss statements, that the restaurant had made $802,000 in profits after defendants stopped sharing profits with plaintiffs and that Lin had withdrawn another $476,526.50 in deductions that were labeled as "cash salary" and "salary not paid" but were actually additional profits. Adding those sums together to $1,278,526.50, plaintiffs' counsel argued that plaintiffs were collectively entitled to a 40% share — or $511,410.60 — of the profits.  Plaintiffs' counsel further argued that the restaurant could be valued by multiplying the total profits from the prior year ($369,000 labeled as profit and $193,239 labeled as "salary not paid," for a total of $562,239) times three, which would yield a total of $1,686,717.  Thus, plaintiffs' counsel argued, the

jury could award plaintiffs collectively 40% of that amount —

$674,710.80 — to represent their collective 40% interest in the

restaurant.[4] Therefore, between lost profits and a share of the

restaurant, plaintiffs' counsel asked the jury to award plaintiffs

$1,186,121.40 collectively.

¶ 26     This is precisely what the jury did. It awarded each of the two

plaintiffs $593,060.70 — which, together, totals $1,186,121.40.

Because this figure is supported by the evidence presented at trial,

and because it is not a gross deviation from an acceptable amount

and is not so excessive as to shock the judicial conscience or

suggest that passion, prejudice, corruption, or other improper

cause invaded the trial, we decline to disturb it. *See Tisch*, ¶ 67.

¶ 27     Shoyu also challenges the trial court's trebling of the damages,

for a total award of $1,779,182.10 for each plaintiff, arguing that

the court was mistaken in concluding that it was *required* by

---

[4] Plaintiffs' counsel made a math error of $24, as 40% of the total is actually $674,686.80. But this difference — which Shoyu doesn't address — is de minimis. *See Nguyen v. Reg'l Transp. Dist.*, 987 P.2d 933, 936 (Colo. App. 1999) (declining to correct an alleged $2.65 math error in a cost award as de minimis); *Compos v. People*, 2021 CO 19, ¶ 35 (warning that this court shouldn't address issues the parties don't raise on appeal).

statute to treble the damages and award attorney fees. We disagree.[5]

¶ 28    Under Colorado's civil theft statute, in any civil action for theft, "the owner may recover two hundred dollars or three times the amount of the actual damages sustained by [the owner], whichever is greater, and may also recover costs of the action and reasonable attorney fees." § 18-4-405.

¶ 29    Shoyu asserts that the statute doesn't mandate an award of treble damages but, rather, that its use of the word "may" confers on a trial court the discretion to decline to award treble damages or attorney fees. But divisions of this court have long recognized that awards of treble damages (so long as the amount of damages, once trebled, exceeds $200) and attorney fees on a civil theft claim are mandatory. *See Franklin Drilling & Blasting Inc. v. Lawrence Constr. Co.*, 2018 COA 59, ¶ 25 n.5 (treble damages); *Steward Software Co.*

---

[5] Although any challenge to the trial court's award of attorney fees is not part of this appeal, as the award wasn't final at the time the appeal was filed, we consider whether attorney fees were awardable on the civil theft claim because it affects the mootness of Shoyu's challenges relating to plaintiffs' other claims. If attorney fees were not properly awarded on the civil theft claim but could have been awarded on one of plaintiffs' other claims, then Shoyu's challenge to that other claim would not be moot.

13

*v. Kopcho*, 275 P.3d 702, 712-13 (Colo. App. 2010) (attorney fees), *rev'd on other grounds*, 266 P.3d 1085 (Colo. 2011).

¶ 30    And, contrary to Shoyu's argument, the mandatory provision of treble damages and attorney fees does not violate its procedural or substantive due process rights. *See Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60, 75 (Colo. App. 2004) (rejecting a defendant's argument that the automatic trebling of damages under the Colorado Consumer Protection Act violated its rights to procedural and substantive due process); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996) ("Only when an award can fairly be categorized as 'grossly excessive' in relation to [a state's legitimate] interests [in punishment and deterrence] does it enter the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment."); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (In comparing the ratio between the harm to a plaintiff and the damage award, "[s]ingle-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in [the] range of 500 to 1 . . . or . . . 145 to 1.").

## C. Shoyu's Other Challenges to the Verdicts

¶ 31    Because we affirm the award of $1,779,182.10 plus attorney fees and costs for each plaintiff on the civil theft claim and because plaintiffs didn't recover any additional damages on any of their other claims, we needn't address Shoyu's contentions regarding the other claims. This includes Shoyu's arguments challenging the sufficiency of the evidence to support the liability findings on the breach of contract, fraudulent concealment, civil conspiracy, and breach of fiduciary duty claims, as well as the damages findings on the breach of contract, breach of fiduciary duty, and promissory estoppel claims.

¶ 32    These challenges are effectively moot because even if Shoyu were to prevail in challenging liability or damages on any of the claims other than civil theft, it would have no effect on the judgment. *See Portley-El v. Colo. Dep't of Corr.*, 2022 COA 86, ¶ 18 ("A claim is moot when the relief sought, if granted, would have no practical legal effect on an actual existing controversy."); *see also Top Rail Ranch Ests., LLC v. Walker*, 2014 COA 9, ¶ 45 (the plaintiffs' arguments on one claim were moot because the damages awarded for that claim were duplicative of the damages awarded on

15

another claim); *Libertarian Party of Colo. v. Williams*, 2016 COA 5, ¶¶ 14-18 (the trial court didn't err by holding one claim moot where the plaintiff had already recovered all the relief it was entitled to on another claim), *rev'd on other grounds*, 2017 CO 86.

¶ 33   Accordingly, we decline to consider these challenges.

### III.   Motion for a New Trial

¶ 34   Shoyu also challenges the trial court's denial of defendants' motion for a new trial.  As we've noted, the court didn't rule on the motion within sixty-three days, so the motion was deemed denied by operation of law under C.R.C.P. 59(j).  We discern no error.

¶ 35   Under C.R.C.P. 59(a) and (d), a party may request a new trial due to, among other reasons, an irregularity in the proceedings that prevented them from receiving a fair trial, a surprise that ordinary prudence couldn't have guarded against, excessive damages, or an error in the law.

¶ 36   A trial court has "considerable discretion" when ruling on a motion for a new trial, and we won't disturb that ruling "absent a clear showing of an abuse of discretion."  *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 502 (Colo. App. 2011).  A court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or

unfair or is based on a misapplication or misunderstanding of the law. *Credit Serv. Co. v. Skivington*, 2020 COA 60M, ¶ 24.

¶ 37 Shoyu asserts that the trial court should've granted a new trial on the bases of (1) irregularity in the proceedings, (2) surprise, (3) excessive damages, and (4) an error in the law. Because Shoyu's first, second, and fourth arguments substantially overlap, we address those three arguments together. We then separately address its third argument.

### A. Irregularity, Surprise, and Legal Error in the Proceedings

¶ 38 Shoyu contends that it was improper for plaintiffs' counsel to argue in closing, without advance warning, that damages should be based in part on the market value of a 40% interest in the restaurant. It also contends that it was improper for plaintiffs' counsel to suggest in closing how that value might be calculated in the absence of expert testimony or other evidence supporting the valuation. Shoyu maintains that the trial court's admission of these arguments over defendants' objection constitutes an irregularity in the proceedings, a surprise, and a legal error, thus warranting a new trial. We disagree for two reasons.

¶ 39    First, the record indicates that throughout the proceeding, plaintiffs clearly and consistently demonstrated that they sought damages based on a collective 40% interest in the restaurant. For example, in their complaint, plaintiffs asserted that they were entitled to a 40% interest in the restaurant and provided an estimation of that interest. Again, in the trial management order, plaintiffs indicated that their damages were premised on their claimed entitlement "to receive a collective forty percent (40%) membership interest in Shoyu, including 40% of all income." Thus, defendants clearly had notice that plaintiffs sought damages based on the value of the restaurant as well as the unpaid profits. And to the extent that plaintiffs didn't provide more precise damage estimates earlier in the case, that was due to defendants' own discovery failures in providing financial documents late or not at all.[6]

---

[6] For instance, the trial court found that defendants kept an accounting ledger (separate from the profit and loss statements they shared with plaintiffs) that would've shown plaintiffs' contributions to and defendants' cash withdrawals from the business. Defendants denied the ledger's existence and refused to produce it. The court determined that the ledger had existed and that the appropriate sanction for its spoliation was to give the jury an adverse inference instruction on it.

¶ 40     And second, there was sufficient evidence presented at trial to support the business valuation plaintiffs' counsel proposed in closing argument. Plaintiffs' counsel relied on the figures in defendants' own profit and loss statements, which were introduced at trial and discussed at length in the parties' testimony. And while expert testimony or other evidence certainly could have supported plaintiffs' approach to calculating the value of the restaurant, it was not required. "Expert testimony is needed only where the issue does not lie within the ambit of common knowledge of ordinary persons." *Park Rise Homeowners Ass'n v. Res. Constr. Co.*, 155 P.3d 427, 430 (Colo. App. 2006). As plaintiffs' counsel argued at trial, ordinary persons could comprehend that a business might be worth some multiple of the annual income derived from that business, and the restaurant's annual income was readily discernible from the records presented at trial. And, as the trial court explained in overruling defense counsel's objection, if defendants disagreed with that proposed valuation, they could rebut it in their own closing.

¶ 41     Accordingly, insofar as plaintiffs' counsel's closing argument sought damages based in part on the value of the restaurant and

19

offered an approach to calculate that value, the argument did not constitute an irregularity in the proceedings that deprived defendants of a fair trial. Nor was the argument a surprise that ordinary prudence could not have guarded against. And the trial court's ruling allowing the argument was not an abuse of discretion and, therefore, was not legal error. *See Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 322 (Colo. App. 2009) ("A trial court's decisions regarding the scope of closing arguments will not be disturbed absent an abuse of discretion."), *aff'd*, 252 P.3d 1071 (Colo. 2011). We therefore discern no abuse of discretion in the denial of defendants' request for a new trial on the basis of irregularity, surprise, or legal error in the proceedings. *See* C.R.C.P. 59(d)(1), (3), (6); *Credit Serv. Co.*, ¶ 24.

## B. Excessive Damages

¶ 42     Shoyu also asserts that defendants should have been granted a new trial on the basis of excessive damages. Again, we disagree.

¶ 43     When a damage award is manifestly excessive in light of the evidence presented at trial, the trial court may grant a new trial or, alternatively, deny a new trial conditioned on a plaintiff's agreement

to remittitur of any damages deemed to be excessive. *Jagow v. E-470 Pub. Highway Auth.*, 49 P.3d 1151, 1157 (Colo. 2002).

¶ 44 Shoyu contends that the damage award is excessive because, as Shoyu sees it, plaintiffs invested a combined $123,000 in the opening of a restaurant and received much of that money back in the initial profit-sharing payments made to them, reducing their net investment to less than $78,000. Thus, Shoyu argues, it was manifestly excessive for the jury to award them each $593,060.70, for a combined total of $1,186,121.40, or more than fifteen times the amount of their investment.

¶ 45 But the jury didn't have to believe that plaintiffs' investment into the restaurant was merely a loan to be paid back. Rather, as we've explained, there was ample evidence for the jury to conclude that plaintiffs made that investment in exchange for ownership of 40% of the restaurant and the entitlement to 40% of its profits. And, as we've also explained, the amount of damages awarded to plaintiffs is supported by evidence in the record.

¶ 46 Accordingly, defendants were not entitled to a new trial or remittitur based on excessive damages, and there was no abuse of

discretion in the denial of that portion of their motion.  *See* C.R.C.P. 59(d)(5); *Credit Serv. Co.*, ¶ 24.

## IV.   Postjudgment Interest Rate

¶ 47    Finally, Shoyu argues that the trial court provided the wrong rate of interest when it ordered postjudgment interest.  We agree.

¶ 48    In entering the judgment, the trial court ordered that interest would accrue on any unpaid amount at "the statutory rate of 9% until paid in full."  We agree with Shoyu that the rate should've been 8% per annum.

¶ 49    Where, as here, there is no agreement to pay interest, the right to interest is purely statutory and is limited to the interest provided for by statute.  *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 389 (Colo. App. 2006).  Accordingly, this issue presents a matter of statutory interpretation, which we review de novo.  *See Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821, 825 (Colo. 2008).  When statutory language is unambiguous, we give effect to its plain and ordinary meaning without resort to rules of construction.  *Id.*

¶ 50    Section 5-12-102, C.R.S. 2025, sets forth the general provisions regarding the accrual of interest on money or property that has wrongfully been withheld.  Under this statute, when the

22

parties haven't agreed to a particular rate of interest, the court applies a rate of 8% per annum. § 5-12-102(1)(b). Section 13-21-101, C.R.S. 2025, provides an exception to this general rule, directing that a 9% per annum rate of interest applies to damages in personal injury actions. § 13-21-101(1); *see also* § 5-12-102(1) (the interest rate set forth in that statute applies "[e]xcept as provided in section 13-21-101").

¶ 51  Because this is not a personal injury action, we conclude that section 5-12-102 applies. *See Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 363 (Colo. 1989); *see also Herod v. Colo. Farm Bureau Mut. Ins. Co.*, 928 P.2d 834, 838 (Colo. App. 1996) ("An injury is personal when it impairs the well-being or the mental or physical health of the victim."). Thus, the trial court should have imposed a postjudgment interest rate of 8%, not 9%. We therefore

reverse the judgment on this issue and remand the case to the trial court to apply the correct interest rate of 8% per annum.[7]

V.    Disposition

¶ 52    The judgment is reversed as to the trial court's imposition of a 9% postjudgment interest rate.  The judgment is affirmed in all other respects.  The case is remanded to the trial court to apply an 8% postjudgment interest rate.

JUDGE WELLING and JUDGE SULLIVAN concur.

---

[7] Shoyu also challenges the accrual date the trial court applied in calculating prejudgment interest on the promissory estoppel and unjust enrichment claims.  But because the trial court limited the total judgment to the amount awarded on the civil theft claim, which exceeded the amount plaintiffs would've recovered on the promissory estoppel and unjust enrichment claims, that challenge is moot and we decline to consider it.